FILED

2023 Aug-17  PM 12:02
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### WESTERN DIVISION

| | |
|---|---|
| **THERESA FINCH,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **4:21-cv-01162-LSC** |
| ) | |
| **KILOLO KIJAKAZI,** ) | |
| **Acting Commissioner,** ) | |
| **Social Security Administration,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OF OPINION

### I.    Introduction

On November 30, 2022, Theresa Finch ("Finch" or "Plaintiff") filed with the Clerk of this Court a complaint against the Acting Commissioner of the Social Security Administration ("Commissioner" or "Defendant"). (Doc. 13.) Finch appeals the Commissioner's decision denying her claim for a period of disability and disability insurance benefits ("DIB"). (Doc. 13.) Finch timely pursued and exhausted her administrative remedies, and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

### II.    Background

Finch has a twelfth-grade education and has previously worked as an aide at a nursing home. (Tr. at 363-64.) She was 55 years old at the time of her application

for a period of disability and DIB on December 28, 2016. (Tr. at 314.) Finch's application for benefits alleged a disability onset date of October 19, 2016. (*Id*.)

The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and thus eligible for a period of disability and DIB. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The evaluator will follow the steps in order until making a finding of either disabled or not disabled; if no finding is made, the analysis will proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The first step requires the evaluator to determine whether the claimant is engaged in substantial gainful activity ("SGA"). *Id*. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not engaged in SGA, the evaluator moves on to the next step.

The second step requires the evaluator to consider the combined severity of the claimant's medically determinable physical and mental impairments. *Id*. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An individual impairment or combination of impairments that is not classified as "severe" and does not satisfy the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 will result in a finding of not disabled. *Id*. The decision depends on the medical evidence contained in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971) (concluding that "substantial evidence in the record" adequately supported the finding that the

claimant was not disabled).

Similarly, the third step requires the evaluator to consider whether the claimant's impairment or combination of impairments meets or is medically equal to one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the criteria of a listed impairment and the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 are satisfied, the evaluator will make a finding of disabled. *Id*.

If the claimant's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluator must determine the claimant's residual functional capacity ("RFC") before proceeding to the fourth step. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e). The fourth step requires the evaluator to determine whether the claimant has the RFC to perform the requirements of her past relevant work ("PRW"). *See id*. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant's impairment or combination of impairments does not prevent her from performing her PRW, the evaluator will make a finding of not disabled. *Id*.

The fifth and final step requires the evaluator to consider the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work. *Id*. at §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can perform other work, the evaluator will find her not disabled. *Id*.; *see also* 20 C.F.R. §§ 404.1520(g), 416.920(g). If the claimant cannot perform other

work, the evaluator will find her disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

Applying the sequential evaluation process, the Administrative Law Judge ("ALJ") first established that Plaintiff has not engaged in SGA since her alleged disability onset date, October 19, 2016. (Tr. at 18.) Next, the ALJ found that Plaintiff's mild intellectual disability, unspecified anxiety disorder, and left eye visual impairment qualify as "severe impairments." (Tr. at 19.) However, the ALJ also found that these impairments neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 21.) Following this determination, the ALJ established that Plaintiff has the following RFC:

> [T]o perform a full range of work at all exertional levels but with the following nonexertional limitations: She can perform simple tasks with a gradual introduction of new task assignments. She can sustain performing the simple tasks for a two-hour period before requiring a break. She must be allowed to change her pace during a particular work period but would still be able to complete all of her assigned duties during each work period (i.e. she must not have a rigid, fixed production rate or a quota for each two-hour work period). In terms of social interaction, she must not be assigned to tandem tasks (i.e. she must be able to complete her assigned duties without having to work in tandem with a coworker). Considering limited intellect along with the diminished vision in one eye, she must not work around dangerous machinery or unprotected heights.

(Tr. at 24-25.)

Relying on the testimony of a vocational expert ("VE"), the ALJ determined that Plaintiff is able to perform her PRW as a cleaner. (Tr. at 32.) From these

findings, the ALJ concluded the five-step evaluation process by stating that Plaintiff "ha[d] not been under a disability, as defined in the Social Security Act, from October 19, 2016," Plaintiff's original alleged disability onset date, through January 26, 2021, the date of the ALJ's decision. (Tr. at 32-33.)

## III.    Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner and (2) whether the correct legal standards were applied. *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). This Court gives deference to the factual findings of the Commissioner, provided that those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, this Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding

from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence. *See Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

However, no decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Moreover, failure to apply the correct legal standards is grounds for reversal. *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984) (citing *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982), *superseded on other grounds by Harner v. Soc. Sec. Admin., Comm'r*, 38 F.4th 892 (11th Cir. 2022)).

## IV.   Discussion

Plaintiff argues that the ALJ's decision should be reversed and remanded for three reasons: 1) the ALJ erred by classifying Plaintiff's PRW solely as a "cleaner" instead of as a "composite job," 2) the ALJ misapplied the pain standard and improperly discredited subjective testimony in regard to Plaintiff's back pain, and 3) the ALJ failed to support the determination of Plaintiff's RFC with substantial

evidence. (Doc. 13 at 2.)

### a. Composite Job Allegation

Plaintiff challenges the ALJ's decision for failure to properly classify her PRW as a composite job, instead classifying it as a cleaner. (Doc. 13 at 9-13.)

Included within the purview of PRW is any work performed within the last 15 years, lasted long enough for the claimant to learn to do it, and was substantial gainful activity. 20 C.F.R. §§ 404.1565(a), 404.1560(b)(1).  To establish whether someone can perform their PRW, the ALJ can use information from the claimant or from sources familiar with the claimant's work, such as employers, coworkers, and family members. 20 C.F.R. §§ 404.1565(b), 404.1560(b)(2). The ALJ may also use the testimony of a Vocational Expert ("VE") and the Dictionary of Occupational Titles ("DOT") to inform this decision. 20 C.F.R. § 404.1560(b)(2).

Composite jobs have "*significant* elements of two or more occupations" and, therefore, "have no counterpart in the DOT." *Past Relevant Work (PRW) as the Claimant Performed It*, Program Operations Manual System ("POMS") DI 25005.020(B), SSR 82-61 (emphasis added). If the *main duties* of a claimant's PRW span across multiple DOT entries, that job may be a composite job. *Id.* (emphasis added). If past relevant work is considered a "composite job," then the ALJ may not consider the "as generally performed in the national economy" inquiry at Step  four. Bitowf v. Saul, 1:18-00845-N, 2021 WL 1183794 at *11 (S.D. Ala. 2021). Rather,

when comparing the claimant's RFC to a PRW classified as a composite job, "the ALJ must consider the particular facts of the individual case to consider whether the claimant can perform his previous work as actually performed." Smith v. Comm'r of Soc. Sec., 743 F. App'x 951, 954 (11th Cir. 2018) (per curiam) (unpublished). "Generally, it is the claimant's burden to show that past relevant work was a 'composite job.'" Bitowf, 1:18-00845-N, 2021 WL 1183794 at *11 (S.D. Ala. 2021).

Plaintiff asserts that her main job duties derived from both the "cleaner" and "dietary aide" positions. (Doc. 13 at 9.) She alleges that because she cooked for a short time in the past 15 years and served and washed dishes, her duties overlapped significantly with the position of "dietary aide," which has duties including:

> Prepares and delivers food trays to hospital patients, performing any combination of following duties on tray line: Reads production orders on color-coded menu cards on trays to determine items to place on tray. Places items, such as eating utensils, napkins, and condiments on trays. Prepares food items, such as sandwiches, salads, soups, and beverages. Places servings in blender to make foods for soft or liquid diets. Apportions and places food servings on plates and trays according to diet list on menu card. Examines filled tray for completeness and places on cart, dumbwaiter, or conveyor belt. Pushes carts to halls or ward kitchen. Serves trays to patients. Collects and stacks dirty dishes on cart and returns cart to kitchen. Washes dishes and cleans work area, tables, cabinets, and ovens. Collects and places garbage and trash in designated containers. May record amount and types of special food items served to patients. May assemble and serve food items to hospital staff in cafeteria.

DOT 319.677-014.

Within the duties listed here, Plaintiff's testimony only describes "serving and

washing dishes" as something she consistently did. (Tr. at 99.) Though Plaintiff did have cooking duties, that undertaking only spanned for two years. (Tr. at 99.) Meanwhile, Plaintiff's Work History Report lists her having "cleaned [for] 8 years [and] laundry [and] then dietary." (Tr. at 369-70.) The relevant job description, "cleaner, hospital" is as follows:

> Cleans hospital patient rooms, baths, laboratories, offices, halls, and other areas: Washes beds and mattresses, and remakes beds after dismissal of patients. Keeps utility and storage rooms in clean and orderly condition. Distributes laundered articles and linens. Replaces soiled drapes and cubicle curtains. Performs other duties as described under CLEANER (any industry) I Master Title. May disinfect and sterilize equipment and supplies, using germicides and sterilizing equipment.

DOT 323.687-010.

Cleaning and laundry satisfy all the duties in the work description above, whereas washing dishes and serving occupy only a minor portion of the dietary aide position. The cooking and food preparation duties that saturate the dietary aide position were only performed by Plaintiff for two years. A minor portion of a job only occurring for two years within the last 15 are not "significant" to bring this into the purview of a composite job. Plaintiff has pointed to no evidence that shows that washing dishes and serving were main parts of her work duties. Indeed, the exchange below between the ALJ, a VE, and Plaintiff's attorney displays that Plaintiff's representation failed to object to the characterization of Plaintiff's job duties as "cleaner".

> ALJ: … [L]et's use the Dictionary of Occupational Titles as a reference, tell me if any of your testimony is inconsistent with that. Let's get your classification and then Mr. Hughes [Plaintiff's attorney] may want to question you about that.
>
> VE: Yes, Your Honor. Ms. Finch has worked as a cleaner. It's DOT number 323.687-010, and that work is medium, it is unskilled with an SVP of 2.
>
> ALJ: Okay. Mr. Hughes, do you have any questions or concerns about that testimony?
>
> ATTY: No, Your Honor.

(Tr. at 89.)

The ALJ properly classified Plaintiff's job as "cleaner." Though some of her duties fell within the description of dietary aide, there is no indication in the record that her main duties included such dietary work, much less for a significant amount of time. The VE's testimony, Plaintiff's Work History Report, and Plaintiff's testimony constitute sufficient evidence for the ALJ to conclude that Plaintiff's PRW was a cleaner. Allowing PRW to be classified as a "composite job" based on any differences between the DOT's description and Plaintiff's actual job duties "would effectively swallow the rule that a claimant is not disabled if [she] can perform past relevant work as that work is generally performed in the national economy, even if [she] can no longer perform it as [she] actually performed it." Bitowf v. Saul, 1:18-00845-N, 2021 WL 1183794 at *12 (S.D. Ala. 2021) (internal citations and quotation marks omitted). Therefore, since Plaintiff failed to meet her burden of showing that her PRW qualifies as a "composite job," her classification as a "cleaner" was proper and the ALJ did not err in finding that she could perform her

PRW as it is generally performed in the national economy.

### b. Misapplication of Pain Standard and Improper Discrediting of Subjective Testimony Allegation

Plaintiff contests the ALJ's judgment regarding the determination of her back pain. Particularly, Plaintiff asserts that the ALJ misapplied the pain standard and improperly discredited subjective testimony of pain. (Doc. 13 at 14-20.)

Plaintiff's subjective complaints alone are insufficient to establish a disability. *See* 20 C.F.R. §§ 404.1529(a), 416.926(a); *Edwards v. Sullivan*, 937 F.2d 580, 584 (11th Cir. 1991). Subjective testimony of pain and other symptoms may establish the presence of a disabling impairment if it is supported by medical evidence. *See Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995). The Eleventh Circuit applies a two-part pain standard when a plaintiff claims disability due to pain or other subjective symptoms. The plaintiff must show evidence of the underlying medical condition and either (1) objective medical evidence that confirms the severity of the alleged symptoms arising from the condition, or (2) that the objectively determined medical condition is of such a severity that it can reasonably be expected to give rise to the alleged symptoms. *See* 20 C.F.R. §§ 404.1529(a), (b), 416.929(a), (b); Social Security Ruling ("SSR") 16-3p, 2016 WL 1119029; *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002).

If the first part of the pain standard is satisfied, the ALJ then evaluates the intensity and persistence of Plaintiff's alleged symptoms and their effect on her

ability to work. *See* 20 C.F.R. §§ 404.1529(c), 416.929(c); *Wilson*, 284 F.3d at 1225–26. In evaluating the extent to which the Plaintiff's symptoms, such as pain, affect his capacity to perform basic work activities, the ALJ will consider (1) objective medical evidence, (2) the nature of Plaintiff's symptoms, (3) the Plaintiff's daily activities, (4) precipitating and aggravating factors, (5) the effectiveness of medication, (6) treatment sought for relief of symptoms, (7) any measures the Plaintiff takes to relieve symptoms, and (8) any conflicts between a Plaintiff's statements and the rest of evidence. *See* 20 C.F.R. §§ 404.1529(c)(3), (4), 416.929(c)(3), (4); SSR 16-3p. In order to discredit Plaintiff's statements, the ALJ must clearly "articulate explicit and adequate reasons." *See Dyer*, 395 F.3d at 1210.

A credibility determination is a question of fact subject only to limited review in the courts to ensure the finding is supported by substantial evidence. *See Hand v. Heckler*, 761 F.2d 1545, 1548–49 (11th Cir. 1985), *vacated for rehearing en banc*, 774 F.2d 428 (11th Cir. 1985), *reinstated sub nom.*, *Hand v. Bowen*, 793 F.2d 275 (11th Cir. 1986). Courts in the Eleventh Circuit will not disturb a clearly articulated finding supported by substantial evidence. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014). However, a reversal is warranted if the decision contains no indication of the proper application of the pain standard. "The question is not . . . whether [the] ALJ could have reasonably credited [Plaintiff's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc.*

*Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011).

Here, the ALJ noted that the impairments underlying Finch's medical conditions could be reasonably expected to cause her alleged symptoms and functional limitations, satisfying the first part of the pain standard. (Tr. at 26.) However, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of these alleged symptoms were not entirely credible by pointing to explicit evidence that was inconsistent with her subjective complaints. (*Id.*)

Although Plaintiff's back pain was not labeled as a "severe impairment" by the ALJ, it was addressed. (*See* Tr. at 19-20.) It is undisputed that back pain was often alleged at her appointments, however, there were other medical conditions to explain why she was experiencing pain. (*See* Tr. at 28 ("acute pain might be attributed to a UTI that was treated conservatively"), Tr. at 618 (stated pain started after picking up her grandson), Tr. at 718 (mentioned her back started hurting after cleaning a lot and she was experiencing "burning with urination.")). The ALJ further pointed to other specific evidence discrediting a "severe" determination. First, even when the claimant alleged back pain, the record labeled the musculoskeletal findings as "normal." (Tr. at 28.) Second, Finch also stated at one of her appointments that she "has no radiating back pain." (*Id.*) Third, she states that she cares for her adult disabled son, which the ALJ also found as a basis for contradiction to her pain

allegations. (Tr. at 20.) Last, although she does have mild scoliosis, the x-ray showed "no imagining indicative of advanced disc or joint disease." (Tr. at 29.) Although there was an opinion to the contrary (*see* Tr. at 644.), the ALJ noted that it was "not a complete capacity assessment; is internally inconsistent; and lacks citations of any medical evidence to support it." (Tr. at 28.) Thus, the ALJ had a valid basis for their determination and characterization as to Plaintiff's back pain and properly considered evidence given the conflicting nature of the evidence presented.

Additionally, plaintiff claims the ALJ erred in determining that her back pain was "acute" rather than "chronic." (Doc. 13 at 16-18.) She provides a comprehensive list of medical visits for back pain and offers that, in January 2019, she reported "chronic back pain… for yrs" and was diagnosed with "Back pain (M54.9), Recurrent." (Tr. at 635, 641.) Plaintiff asserts that her repeated medical visits for back pain and this diagnosis sufficiently establish that it was chronic. (Doc. 13 at 15-17.) Plaintiff was also instructed to "come back for an xray" at this visit. (Tr. at 641.) In his evaluation of the acceptable medical evidence, the ALJ considered such reports of back pain alongside the consultative medical examination from Morton S. Rickless, M.D. to determine the severity of the pain. (Tr. at 29, 527-32.)

This objection is without grounds since the ALJ did not opine on the acute or chronic nature of Plaintiff's long-term pain and only determined whether it qualified as a severe physical limitation. When the ALJ used the word acute to describe

Plaintiff's back pain, he relied on the medical descriptions of the back pain as acute for those particular visits and did not characterize Plaintiff's back pain throughout the record as acute. (Tr. at 19, 28, 569, 724, 764.) Indeed, the ALJ did not designate Plaintiff's longitudinal back pain as either acute or chronic. (Tr. at 19-20, 28-29.) The ALJ instead determined that her reports of back pain and any related musculoskeletal issue would pose no severe physical limitation on her ability to engage in SGA. (Tr. at 28-29.)   In considering Plaintiff's musculoskeletal impairments, the ALJ specifically referenced the x-rays performed at Plaintiff's consultative examination with Dr. Rickless. (Tr. at 19, 28.) Such x-ray evidence, which Plaintiff's regular treatment provider Tracy Wade, Nurse Practitioner, recommended at Plaintiff's January 2019 appointment, alongside other treatment records, medical opinions, and Plaintiff's activities, constitutes substantial evidence for the ALJ to determine that the back pain did not qualify as a severe physical limitation from engaging in SGA. Even if Plaintiff's numerous medical visits for back pain could lead to the conclusion that it was a severe physical limitation, "[t]he substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S.

607, 620 (1966)).

In addition, Plaintiff asserts that the ALJ failed in his responsibility to fully and fairly develop the record in regard to her back pain. (Doc. 13 at 18.) Quoting an exchange in the ALJ's second hearing, Plaintiff alleges that the ALJ should have further developed the record regarding her back pain by means such as an MRI or a secondary consultative examination. (Doc. 13 at 17-18.) It is true that the ALJ has a duty "to develop the facts fully and fairly and to probe conscientiously for all of the relevant information." *Ware v. Schwieker*, 651 F.2d 408, 414 (5th Cir. Unit A 1981). However, in all social security disability cases, the claimant bears the ultimate burden of proving disability, and is responsible for furnishing or identifying medical and other evidence regarding her impairments, and "[i]t is not unreasonable to require the claimant, who is in a better position to provide information about h[er] own medical condition, to do so." *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Doughty*, 245 F.3d. at 1280; 42 U.S.C. § 423(d)(5)(A). An ALJ has many options, but no affirmative requirements, for settling an inconsistency or insufficiency in a claimant's medical record. *See* 20 C.F.R. § 404.1520b.  He has the option to contact the treating physician, ask the claimant for additional records, request a consultative examination, or ask the claimant and/or others for more information. *Id.* The ALJ may exercise all or none of these potential remedies. *Id.* He is not required to take any of those steps if he determines that weighing the

available evidence will be sufficient. *Id.* Therefore, where the ALJ's findings are supported by evidence sufficient for a decision, the ALJ is not obligated to seek additional medical testimony. *See Wilson v. Apfel*, 179 F.3d 1276, 1278 (11th Cir. 1999) (stating that the opinions of several physicians in the record was sufficient and "additional expert testimony was unnecessary.")

Furthermore, before remanding for further development of the record, a reviewing court must consider "whether the record reveals evidentiary gaps which result in unfairness or 'clear prejudice.'" *Smith v. Schweiker*, 677 F.2d 826, 830 (11th Cir.1982) (quoting *Ware*, 651 F.2d at 413). "[A]lthough the ALJ has a duty to develop a full and fair record, there must be a showing of prejudice before [a reviewing court] will remand for further development of the record." *Robinson v. Astrue*, 365 Fed. App'x 993, 995 (11th Cir. 2010) (citing *Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995)).

The record shows that the ALJ did take steps to further develop it. These steps include an orthopedic consultative examination from Dr. Rickless, which did provide clarifying evidence such as the aforementioned x-rays, as well as a psychological consultative examination from Jerry Bynum, Ph.D. (Tr. at 527-541.) Plaintiff offered this quote from the ALJ's Second Hearing to demonstrate the need for development of the record:

> ALJ: Okay. Yeah. I was hoping that she might have an MRI by now,
> but I do realize they're basically on limited funds . . . And a lot of times
> they don't do advanced diagnostic testing imaging, but unfortunately
> Social Security doesn't either, not in terms of MRI…

(Tr. at 72.)

The ALJ's commentary here establishes that Social Security does not perform advanced diagnostic imaging such as MRIs, so he did not have the option to develop the record further by ordering one to be conducted. Furthermore, this quote does not display that an MRI is necessary for substantial evidence, only that it would be helpful. As mentioned above, by weighing the existing evidence, including medical records, subjective testimony, and Plaintiff's activities, the ALJ satisfied the substantial evidence standard to determine that Plaintiff's back pain did not constitute a severe physical impairment.  Furthermore, while the determination of Plaintiff's back pain as a severe physical limitation might have changed the ALJ's decisions, Plaintiff has not demonstrated that such a gap in the record is the result of unfairness or clear prejudice. Thus, Plaintiff's objection that the ALJ misapplied the pain standard and incorrectly discredited subjective testimony about her back pain is without merit.

### c.  RFC Not Supported by Substantial Evidence Allegation

Plaintiff alleges that the ALJ did not support her finding of Plaintiff's RFC with substantial evidence. (Doc. 13 at 20-21.) Specifically, Plaintiff contends that

the ALJ prohibiting tandem tasks to account for her anxiety conflicts with the showing that she needs lots of assistance on the job. (*Id.*)

A claimant's RFC reflects her ability to perform "work-related physical and mental activities in a work setting" within a forty-hour work week in light of her "functional limitations and restrictions that result from [a] medically determinable impairment or combination of impairments, including the impact of any related symptoms." SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996); *see also* 20 C.F.R. §§ 404.1520(e), 416.920(e). "RFC is not the *least* an individual can do despite his or her limitations or restrictions, but the *most*." SSR 96-8p, 1996 WL 374184, at *1 (emphasis in original). The ALJ bases a claimant's RFC on all the evidence in the record, including information about the claimant's symptoms and medical opinions. *Id.* at *2. Moreover, the determination of a claimant's RFC lies within the sole purview of the ALJ, not the doctors providing medical opinions or other evidence. *Robinson v. Astrue*, 365 F. App'x 993, 999 (11th Cir. 2010) ("[T]he task of determining a claimant's [RFC] and ability to work is within the province of the ALJ, not of doctors."); *Carson v. Comm'r of Soc. Sec. Admin.*, 300 F. App'x 741, 743 (11th Cir. 2008) ("While statements from treating physicians regarding the level of work a claimant can perform are important, they are not determinative because the ALJ has the ultimate responsibility to assess a claimant's [RFC].").

Plaintiff's argument fails because it misunderstands the ALJ's RFC and

incorrectly concludes that it prohibits Plaintiff from seeking necessary assistance for her work tasks. Plaintiff posits that this RFC does not adequately represent her capacity to work since she has required assistance in work tasks in her PRW. (Doc. 13 at 20-21.) The ALJ determined that Plaintiff "must not be assigned tandem tasks (i.e. she must be able to complete her assigned duties without having to work in tandem with a coworker)." (Tr. at 25.) The ALJ elaborates by saying that he "limited the claimant's interaction with others in completing work tasks" due to the severe impairment posed by her unspecified anxiety disorder. (Tr. at 31.) The ALJ explains that Plaintiff "must not be assigned" such tasks, which prohibits potential employers from imposing social interaction. These quotes make clear that the ALJ aims to decrease the necessity of social interaction in the workplace for Plaintiff, not to prohibit her from seeking assistance. Plaintiff has no limitation in seeking social interaction or assistance as necessary within the RFC, so her objection is invalid.

Additionally, that Plaintiff has required or received assistance in her work duties in the past does not imply she would need help in the future. Letters from her coworkers describe that Plaintiff needed assistance to read recipes and diet cards and fill out paperwork. (Tr. at 474-78.) Plaintiff testified at the first hearing that she needed assistance with reading at work. (Tr. at 91-92.) The vocational expert classified her past relevant work as a "cleaner, hospital" as described in the DOT. (Tr. at 89.) Reading-related work is not among the main duties of this job description,

so Plaintiff's necessity for assistance cannot be taken as granted. *See* Cleaner,

Hospital, DOT § 323.687-010.

## V.      Conclusion

Upon review of the administrative record, and considering Plaintiff's argument,

this Court finds the Commissioner's decision is supported by substantial evidence

and in accordance with the applicable law. For the foregoing reasons, this Court

hereby AFFIRMS the Commissioner's decision.

**DONE** and **ORDERED** on August 17, 2023.

_____

L. Scott Coogler
United States District Judge

215708